UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GEORGE MCELROY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PACIFIC AUTISM CENTER FOR EDUCATION, et al., <br><br> Defendants. | Case No. 14-CV-04118-LHK <br><br> **ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY** <br><br> Re: Dkt. No. 29 |

Plaintiffs George and Gia McElroy, and their minor child, G.J.M., (collectively, "Plaintiffs") bring suit against defendants Pacific Autism Center for Education ("PACE"), Santa Clara County Office of Education, Kurt Ohlfs, Kelly Montague, Megan Nolan, the Board of Directors and Officers of the Pacific Autism Center for Education, and Does 1-50 (collectively, "Defendants"). Before the Court is Defendants' motion to disqualify Plaintiffs' Counsel, Mr. David Tollner, and by imputation, Plaintiffs' co-counsel at the law firm of Corsiglia McMahon & Allard LLP (the "Corsiglia firm"). ECF No. 29.

The Court finds this matter suitable for decision without oral argument under Civil Local Rule 7-1(b) and hereby VACATES the motion hearing set for May 21, 2015, at 1:30 p.m. The case management conference set for that date and time remains as set. Having considered the

1
Case No. 14-CV-04118-LHK
ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY

submissions of the parties, the relevant law, and the record in this case, the Court DENIES Defendants' motion to disqualify Plaintiffs' counsel.

## I. BACKGROUND

### A. The Alleged Mistreatment of G.J.M. While Under Defendants' Care

This lawsuit stems from allegations that Plaintiffs' autistic, minor son, G.J.M., was mistreated and abused while in the care of PACE's residential facilities. PACE is a private, non-profit organization and is a California Certified Nonpublic School, credentialed by the California Department of Education. ECF No. 1 ("Compl.") ¶ 4. PACE is designed and marketed as a school and residential center that specializes in the care, treatment, and education of individuals with autism. *Id.*

Mr. and Mrs. McElroy are the biological parents of G.J.M., who was twelve years old in 2010 when he was initially placed at PACE. *Id.* ¶¶ 2, 3, 23-25. At that time, he was in good physical and emotional health. *Id.* ¶ 25. Plaintiffs' complaint contains several disturbing allegations of mistreatment, only a few of which are recounted below. Plaintiffs allege that shortly after placement, G.J.M. began a "downward spiral, behaviorally, emotionally, physically, and academically." *Id.* ¶ 27. For example, G.J.M. began engaging in self-injurious behaviors, such as repeatedly banging his head into the floor to the point where G.J.M. developed swelling, bruising, abrasions and head lacerations which ultimately resulted in a permanent "horn" protrusion on G.J.M.'s forehead. *Id.* ¶¶ 34-37. G.J.M. also developed unhealthy eating habits during this time, such as primarily eating copious amounts of ketchup-water "soup," resulting in G.J.M.'s drastic weight loss to a mere 67 pounds by the time he was fourteen years old. *Id.* ¶¶ 43-48. Plaintiffs further allege that G.J.M. was allowed to roam naked for hours at a time and would urinate upon himself and others. *Id.* ¶¶ 46, 82. Plaintiffs also contend that on bus rides G.J.M. was often either over-restrained (forcefully, and in one instance suffering an eye injury) or under-restrained (allowing G.J.M. to roam about a moving bus). *Id.* ¶¶ 49-59. G.J.M. finally left PACE in July 2012, having resided at Defendants' facilities for just under two years, from September 2010 to July 2012. *Id.* ¶¶ 11, 23, 138.

### B. Plaintiffs' Complaint

In June 2014, Plaintiffs filed the instant case in California Superior Court. *See* Compl. Plaintiffs asserted twelve causes of action against Defendants including, *inter alia*, assault and battery, fraud, civil rights violations, and violations of various laws designed to protect disabled individuals. *Id.* In sum, the common thread binding these claims is the alleged mistreatment of G.J.M. at PACE's facilities from the years 2010-2012. *See id.*

The lawyer who filed Plaintiffs' complaint was Mr. Bradley Corsiglia of the Corsiglia firm. *Id.* On September 11, 2014, the Complaint was removed from California state court to this Court. ECF No. 1. On December 16, 2014, Mr. David Tollner associated into the case to represent Plaintiffs as co-counsel with the Corsiglia firm. ECF No. 17. On January 26, 2015, Defendants filed the instant motion to disqualify both Mr. Tollner, based on his prior involvement with PACE, and the Corsiglia firm for working with Mr. Tollner. ECF No. 29 ("Motion" or "Mot.").

### C. Mr. Tollner

Mr. Tollner graduated from law school in 1988 and began practicing law in private practice immediately thereafter. ECF No. 35 ¶ 2. In 1996, Mr. Tollner became a member of the Board of Directors of PACE. *Id.* ¶ 3. His duties included attending board meetings, approving financial decisions, and ensuring that the organization remained viable. *Id.* In 2002, Mr. Tollner inactivated his law license and became the Executive Director of PACE. *Id.* ¶ 4. His responsibilities as Executive Director involved (1) financial management and fundraising, (2) employee management and supervision, (3) new program development, and (4) reporting to the Board on areas (1), (2), and (3). *Id.* ¶ 5. Although Mr. Tollner is an attorney by trade and maintained his law license in an active status while he served on the Board of Directors, there is no allegation that Mr. Tollner acted as an attorney for PACE or that Mr. Tollner served in any legal capacity for PACE either while he served on the Board of Directors or while he served as the Executive Director of PACE. According to a sworn declaration by Mr. Tollner, he never represented PACE as an attorney nor was he involved in any litigation concerning PACE. *Id.* ¶

3
Case No. 14-CV-04118-LHK
ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY

1    23. Defendants do not dispute these facts. *See* Mot. at 4-5; ECF No. 36. In 2005, Mr. Tollner left

2    PACE and has had no further involvement with the organization. ECF No. 35 ¶ 21. Mr. Tollner's

3    immediate successor to the Executive Director position was Mr. Ohlfs, who had served on the

4    Board of Directors while Mr. Tollner was the Executive Director. ECF No. 29-5 ¶ 4. Mr. Ohlfs

5    continues to serve as the Executive Director of PACE and is a named defendant in this case. *Id.*

6    Mr. Tollner reactivated his law license in 2006 and has returned to private practice,

7    specializing in special education and civil rights law involving children with special needs. ECF

8    No. 35 ¶ 21. At least half of Mr. Tollner's practice involves representing children with autism. *Id.*

9    Mr. Tollner purports to be the only San Jose-based special education attorney and among only a

10   handful of full-time special education attorneys in the entire Bay Area. *Id.* ¶ 22.

## II. LEGAL STANDARD

"The right to disqualify counsel is a discretionary exercise of the trial court's inherent powers." *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 918 (N.D. Cal. 2003). Under Civil Local Rule 11-4(a)(1), all attorneys who practice in this Court must comply with the standards of professional conduct required of members of the State Bar of California. This Court, therefore, applies state law in determining matters of disqualification. *See In re Cnty. of L.A.*, 223 F.3d 990, 995 (9th Cir. 2000).

Rule 3-310(E) of the Rules of Professional Conduct of the State Bar of California prohibits the successive representation of clients in certain circumstances without the informed written consent of the current client and former client. The rule provides: "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

Interpreting Rule 3-310(E), the California Supreme Court has held: "Where an attorney successively represents clients with adverse interests, and where the subjects of the two representations are substantially related, the need to protect the first client's confidential information requires that the attorney be disqualified from the second representation." *People ex*

*rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1146 (1999) (citing *Flatt v. Super. Ct.*, 9 Cal. 4th 275, 283 (1994)). "To determine whether there is a substantial relationship between successive representations, a court must first determine whether the attorney had a direct professional relationship with the former client in which the attorney personally provided legal advice and services on a legal issue that is closely related to the legal issue in the present representation." *City & Cnty. of S.F. v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 847 (2006). "When a substantial relationship between the two representations is established, the attorney is automatically disqualified from representing the second client." *Id.* The burden is on the party seeking the disqualification "to show both the fact of the former representation and the existence of a substantial relationship between the former and current representations." *In re Charlisse C.*, 45 Cal. 4th 145, 166 n.11 (2008). "[R]ule 3-310 controls conflicts of interest and disqualification motions *only in the context of attorney-client relationships*." *Oaks Mgmt. Corp. v. Super. Ct.*, 145 Cal. App. 4th 453, 465 (2006).

In considering whether to disqualify counsel, the Court is guided by the overarching principle that "the business of the court is to dispose of litigation and not to oversee the ethics of those that practice before it unless the behavior taints the trial." *See Continental Ins. Co. v. Super. Ct.*, 32 Cal. App. 4th 94, 111 n. 5 (1995) (internal quotation omitted). Moreover, "[b]ecause disqualification is a drastic measure, it is generally disfavored and should only be imposed when absolutely necessary." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 814 (N.D. Cal. 2004). "Moreover, with regard to the ethical boundaries of an attorney's conduct, a bright line test is essential." *Snider v. Super. Ct.*, 113 Cal. App. 4th 1187, 1197 (2003) (internal quotation omitted). "As a practical matter, an attorney must be able to determine beforehand whether particular conduct is permissible; otherwise, an attorney would be uncertain whether the rules had been violated until . . . he or she is disqualified." *Id.* (internal quotation omitted).

### III.   DISCUSSION

Defendants argue that (1) Mr. Tollner should be disqualified because there is a "substantial relationship" between Mr. Tollner's prior employment with PACE and the instant litigation, (2)

5
Case No. 14-CV-04118-LHK
ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY

1  Mr. Tollner should be disqualified based on his continuing fiduciary duty to PACE, and (3) the
2  Corsiglia firm should be disqualified because that firm decided to work with Mr. Tollner on this
3  matter. Mot. at 9-12. Each is addressed in turn.

### A. Rule of Professional Conduct 3-310

Defendants argue that Mr. Tollner's prior employment with PACE warrants his disqualification from this litigation because there is a "substantial relationship" between the two. Mot. at 10. According to Defendants, this lawsuit is about the failure of PACE's policies and procedures resulting from the mismanagement, intentional misconduct, and indifference of PACE's upper management. *Id.* Defendants further contend that because Messrs. Tollner and Ohlfs served together on PACE's board of directors, Mr. Tollner was able to gain confidential information from Mr. Ohlfs, a Defendant, regarding the current subject matter of this action. *Id.* at 11. Plaintiffs respond that Mr. Tollner never represented PACE as an attorney and that there is no relationship between this cause of action, involving the alleged abuses to G.J.M. from 2010-12, and Mr. Tollner's employment at PACE, from 1996-2005. ECF No. 34 at 7-9, 12-13. For the reason stated below, the Court agrees with Plaintiffs.

The "substantial relationship" test is the test which governs the analysis under Rule 3-310(E) of the Rules of Professional Conduct of the State Bar of California. *See SpeeDee*, 20 Cal. 4th at 1146. The rule serves to protect "a hallmark of our jurisprudence," which is "the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense." *Id.* (internal quotations omitted). Thus, Rule 3-310 prohibits attorneys from accepting, without the former client's informed written consent, employment adverse to the former client where, "by reason of the representation of the . . . former client, the [attorney] has obtained confidential information material to the employment." *Id.* (quoting Rule 3-310). If an attorney could freely use a former client's confidences to aid a future client, the fear of such a possibility would chill incentives otherwise encouraging frank communications with one's attorney.

Here, the parties do not dispute that Mr. Tollner never acted as an attorney or in any legal

6
Case No. 14-CV-04118-LHK
ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY

1  capacity for PACE, nor was PACE ever a "client" of Mr. Tollner. In other words, there was no
2  attorney-client relationship between Mr. Tollner and PACE. Accordingly, because "rule 3-310
3  controls conflicts of interest and disqualification motions *only in the context of attorney-client*
4  *relationships*," Mr. Tollner's prior employment with PACE cannot serve as a basis to disqualify
5  him, pursuant to Rule 3-310, as counsel for Plaintiffs. *Oaks*, 145 Cal. App. 4th at 465.

### B.  Mr. Tollner's Prior Fiduciary Relationship

Defendants further argue that the Court should disqualify Mr. Tollner based on his prior fiduciary relationship with PACE. According to Defendants, because Mr. Tollner exercised discretionary authority on behalf of PACE and received confidential information about PACE, his continuing duty to PACE to maintain the confidentiality of this information requires that Mr. Tollner be precluded from representing Plaintiffs in their suit against Mr. Tollner's successor (Mr. Ohlfs) and the Board of which Mr. Tollner was formerly a member. Mot. at 9-10. Plaintiffs respond that Mr. Tollner's prior employment with PACE, from 1996-2005, bears no relation at all to the facts of this case, which involves the mistreatment of G.J.M. from 2010-2012. Specifically, Plaintiffs contend that "[t]his lawsuit is about the rights of plaintiff and the abuse he suffered while in the Defendants' care, *more than five years after Tollner left PACE*" and that "the only issues relevant to this matter are those directly pertaining to plaintiff's care and treatment." ECF No. 34 at 8. For the reasons stated below, the Court agrees with Plaintiffs and concludes that Defendants failed to carry their burden to show that Mr. Tollner's prior employment with PACE should result in Mr. Tollner's disqualification.

#### 1.  Applicability of the "substantial relationship" test

California's Rules of Professional Conduct used to include Rule 5-102(B), which provided: "A member of the State Bar shall not represent conflicting interests, except with the written consent of all parties concerned." *See William H. Raley Co. v. Super. Ct.*, 149 Cal. App. 3d 1042, 1046 (1983) (quoting Rules of Professional Conduct of the State Bar of California). In *Raley*, a California appellate court held that Rule 5-102 "includes conflicts of interest arising other than in the course of legal representation" and that a conflict under this rule "may arise from an

7
Case No. 14-CV-04118-LHK
ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY

attorney's relationship with a non-client." *Id.* at 1046-47 (internal quotation omitted). Under this Rule, there are two scenarios where a conflict may arise: (1) "where an attorney's relationship with a person or entity creates an expectation that the attorney owes a duty of fidelity," or (2) "where the attorney has acquired confidential information in the course of such a relationship which will be, or may appear to the person or entity to be, useful in the attorney's representation in an action on behalf of a client." *Id.* (internal quotation omitted). Since that time, however, the California Supreme Court adopted the revised Rules of Professional Conduct, combining former rules 5-102 and 4-101 into current rule 3-310. *Oaks*, 145 Cal. App. 4th at 465. "Unlike former rule 5-102, rule 3-310 controls conflicts of interest and disqualification motions *only in the context of attorney-client relationships*." *Id.* Thus *Raley* was premised upon a rule which no longer exists. *See id.*

The issue thus becomes whether the holding in *Raley* remains viable even though the rule underpinning its decision is no longer in force. Defendants' Motion cites *Raley*, and a couple of federal district court decisions that have applied *Raley* even after the abrogation of former rule 5-102. Mot. at 7. Further, California appellate courts have stated that "[a]lthough the provisions of former rule 5-102 have been amended and replaced by current rule 3-310, *Raley*'s reasoning remains good law." *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*, 69 Cal. App. 4th 223, 232 (1999). On the other hand, certain other California appellate courts have questioned the continuing viability of *Raley* after the abrogation of former Rule 5-102. *See, e.g.*, *Oaks*, 145 Cal. App. 4th at 465 (noting that "courts have cited *Raley* after the abrogation of former rule 5–102," but nonetheless distinguishing *Raley* based on its facts). The California Supreme Court has not squarely addressed the question of whether an attorney's relationship with a non-client, such as serving on the Board of a company, may serve as a conflict of interest precluding that attorney from being adverse to the non-client. Federal courts must apply "California law as we believe the California Supreme Court would apply it." *In re KF Diaries, Inc. & Affiliates*, 224 F.3d 922, 924 (9th Cir. 2000). Intermediate California appellate court decisions, although persuasive, are not binding authority and federal courts are not bound by them if it is believed that "the California

8

Case No. 14-CV-04118-LHK
ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY

Supreme Court would decide otherwise." *Id.* (internal quotation omitted).  Here, there is a compelling reason to believe that the California Supreme Court, by expressly removing former Rule 5-102 (which did not mention "client") and replacing it with new Rule 3-310 (which refers to conflicts involving clients or former clients only) intended to clarify that only attorney-client relationships may give rise to conflicts of interest under the Rules of Professional Conduct governing attorneys.

Regardless, the Court need not, and does not, resolve this issue today.  As explained below, even if *Raley* remains good law, the Court determines that Defendants have failed to satisfy their burden to show that Mr. Tollner's prior, non-attorney relationship with PACE creates a conflict of interest.

Unlike in *Raley*, which involved concurrent relationships, in the instant case Mr. Tollner's prior employment with PACE and his current representation of Plaintiffs is not concurrent, but rather successive. *Cf. Raley*, 149 Cal. App. 3d at 1047-48 (holding that the law firm, by representing the plaintiff and having a partner with a fiduciary interest in the defendant, was "on both sides of [the] lawsuit" "at the same time").  Moreover, while Mr. Tollner may have had a duty of loyalty to PACE while serving as its Executive Director, at best he only owes a duty to keep the confidences he acquired during his tenure, which ended in 2005. *See, e.g.*, *In re Mortgage & Realty Trust*, 195 B.R. 740, 750 (C.D. Cal. 1996) (holding that while "the fiduciary duties of a director or trustee terminate when the director or trustee ends his or her tour of duty," "[t]he duty to protect and preserve confidential information received during service as a director continues after the director leaves the board").  California courts applying *Raley* in similar situations have applied a "substantial relationship" test similar to the one typically used in conducting an analysis under Rule 3-310 for successive attorney-client relationships. *See, e.g.*, *Morrison*, 69 Cal. App. 4th at 233-34 (applying the "substantial relationship" test in the case of successive interests).  The Court will now conduct an analysis using this test.

### 2. Application of the "substantial relationship" test

"The test for a substantial relationship between cases entails an inquiry into the similarities

9
Case No. 14-CV-04118-LHK
ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY

between the two factual situations, the legal questions posed, and the nature and extent of the attorney's involvement with the cases." *Id.* at 234 (internal quotation omitted). For the reasons stated below, the Court determines that Defendants failed to carry their burden to show that Mr. Tollner's prior employment with PACE bears a "substantial relationship" with his current representation.

### a. Similarities between the two factual situations

The factual situation between Mr. Tollner's prior and present relationships vis-à-vis PACE bear no relation to one another. In attempting to show that Mr. Tollner's prior employment is factually similar to the present litigation, Defendants primarily rely on three arguments: (1) the present lawsuit is really an attack on PACE's management practices and is therefore related to Mr. Tollner's prior employment, (2) Mr. Tollner acquired knowledge of PACE's operations and financial information during his employment, and (3) Mr. Tollner signed a confidentiality statement in 2002. Each is addressed in turn.

The current litigation involves the alleged abuses suffered by a specific individual, G.J.M., who was enrolled in a PACE facility from 2010-12. Plaintiffs' complaint *is* limited in scope to recovery for the abuses suffered by G.J.M. while residing at PACE's facilities from 2010-12. *See, e.g.*, Compl. Each cause of action is limited in time and scope to the period where G.J.M. resided at a PACE facility and seeks recovery for the alleged injuries caused during that time period. *Id.* Mr. Tollner had no involvement with PACE while G.J.M. was residing at its facilities. Indeed, when Mr. Tollner left PACE in 2005, it would be another five years before G.J.M. came to reside at a PACE facility. Similarly, while serving at PACE, Mr. Tollner was not responsible for any policy decisions relevant to this case. *See, e.g.*, ECF No. 35 ¶¶ 16-20. While serving PACE as board member and Executive Director from 1996-2005, Mr. Tollner's responsibilities involved financial management and fundraising, employee management and supervision, new program development, and reporting to the Board. There is no allegation that Mr. Tollner was involved, even tangentially, in causing any harm to G.J.M. or that any such harm was the result of decisions made during Mr. Tollner's tenure as Executive Director five years earlier.

10
Case No. 14-CV-04118-LHK
ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY

Defendants also allege that Mr. Tollner is "very familiar" with PACE's financial condition, fund raising ability, assets, attitude towards litigation, and budgeting process. Mot. at 9-10. Defendants contend that Mr. Tollner received confidential information from Mr. Ohlfs and that Mr. Tollner's general knowledge about PACE's finances will give Plaintiffs an "unfair advantage in settlement negotiations." Mot at 10-12. The Court is not persuaded for three primary reasons. First, while Mr. Ohlfs contends he had "closed door" meetings with Mr. Tollner, Mr. Ohlfs does not contend that the subject of these discussions was in any way related to how G.J.M. was treated five years later. *See* ECF No. 29-5 ¶ 14. Second, PACE's financial information is likely discoverable and Defendants have failed to identify any applicable privilege that would otherwise protect such information from disclosure. Moreover, the details of PACE's financial information are both public and readily available. ECF No. 34 at 7; ECF No. 35 ¶ 7. Furthermore, Defendants have failed to explain how Mr. Tollner's alleged knowledge of PACE's financial information and operational practices from ten years ago would be relevant to this case. Third, Defendants' contention that Mr. Tollner will have an unfair advantage in settlement negotiations because he knows PACE's ten-year-old attitude towards litigation is equally unpersuasive. As stated above, the details of PACE's financials are public and discoverable, and the fact that a non-profit institution would desire to avoid a costly litigation is hardly privileged or confidential.

The Court also rejects Defendants' remaining argument that a confidentiality statement signed by Mr. Tollner at the outset of his tenure with PACE requires the Court to presume that Mr. Tollner acquired confidential information substantially related to this case. *See* Mot. at 9-10; ECF No. 34 at 10-11; ECF No. 36 at 3. The primary focus of the confidentiality statement was to protect the confidential information of PACE's students, including their medical and financial records. Further, to the extent the statement also applies to confidential business policies of PACE from 2002-05, Defendants have failed to explain how PACE's business policies from that time period are relevant to the instant case. Moreover, even assuming Mr. Tollner did acquire knowledge regarding the inner-workings of PACE from 5-10 years ago, Defendants failed to establish how this knowledge would be related to the specific injuries and abuses suffered by

United States District Court
Northern District of California

1   G.J.M. five years later as a result of the action or inaction of PACE, its management, and its staff
2   members.
3       Thus, the two factual situations are separated both in time and in substance and the Court
4   finds that no confidences were acquired by Mr. Tollner that would bear any relation to Plaintiffs'
5   lawsuit against Defendants.

### b. Legal questions posed

Any "legal questions" presented by Mr. Tollner's employment at PACE also differ from any legal questions at issue in the present litigation. During Mr. Tollner's tenure on the board and as Executive Director, he was not involved in any litigation, let alone any comparable litigation brought against PACE involving allegations similar to those in this case. *See* ECF No. 25 at 1; ECF No. 35 ¶ 23. Although Defendants contend that Mr. Tollner had access to prior litigation files and its outcomes (ECF No. 29-5 ¶ 12), Mr. Tollner declares that he did not work on any legal matters nor did he acquire any confidential information (ECF No. 35 ¶ 23). Even if Mr. Tollner had access to prior, confidential information, Defendants have failed to show how any legal questions presented by Mr. Tollner's role at PACE from 1996-2005 bears any relationship, let alone a substantial relationship, to any legal questions in the current suit involving G.J.M. Accordingly, the Court finds that Defendants have failed to show a similarity in legal questions between Mr. Tollner's employment at PACE and the instant case.

### c. Nature and extent of the attorney's involvement

The final factor, the nature and extent of the attorney's involvement, is the only factor suggesting the potential for a conflict. Mr. Tollner served on PACE's board of directors for six years, and as the executive director—the highest position in the organization—for three. *See* ECF No. 29-5 ¶ 8 ("At the time Mr. Tollner served as Executive Director, there was no higher position within PACE's management structure."). During this time, Mr. Tollner exercised discretionary authority for PACE and was intimately familiar with PACE's operations. *Id.* ¶¶ 9-10. Here, Plaintiffs have hired Mr. Tollner because of his "extensive expertise" in the "unique area of special education and mental disability litigation." ECF No. 34 at 18. It can be expected,

therefore, that Mr. Tollner will be intimately involved with representing Plaintiffs in this litigation, even though his co-counsel at the Corsiglia law firm has a strong background in civil litigation and trial experience. *Id.* Although the Court concludes that this factor weighs in favor of finding a substantial relationship exists between Mr. Tollner's prior employment with PACE and the present litigation against PACE, because Defendants have failed to carry their burden to show any overlap in the factual situations or legal questions presented, this factor is not dispositive.

### d. Summary

In sum, Defendants failed to make a sufficient showing to warrant disqualification of Mr. Tollner. While Mr. Tollner was intimately involved with PACE a decade ago, the Court finds that his prior employment bears no factual or legal relationship to the present dispute. The Court, in holding that Mr. Tollner may continue to represent Plaintiffs in this litigation, does not pass upon whether, and to what extent, Mr. Tollner continues to owe any fiduciary duties to PACE. Besides, "the business of the court is to dispose of litigation and not to oversee the ethics of those that practice before it unless the behavior taints the trial." *Continental*, 32 Cal. App. 4th at 111 n.5. The Court today finds only that Defendants have failed to meet their burden to show entitlement to the drastic remedy of disqualification.

Because the Court determines that Mr. Tollner need not be disqualified from representing Plaintiffs in this case, the Court need not address Defendants' arguments that any conflicts of interest must be imputed to counsel at the Corsiglia law firm.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to disqualify Plaintiffs' counsel is hereby DENIED.

**IT IS SO ORDERED.**

Dated: May 13, 2015

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

13
Case No. 14-CV-04118-LHK
ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY