1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

GEORGE MCELROY, et al.,

        Plaintiffs,

    v.

PACIFIC AUTISM CENTER FOR
EDUCATION, et al.,

        Defendants.

Case No. 14-CV-04118-LHK

**ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT**

Re: Dkt. No. 65

Before the Court is a motion for summary judgment brought by Defendants Pacific Autism Center for Education ("PACE"), Kurt Ohlfs, Kelly Montague, Megan Nolan, and the Board of Directors and Officers of PACE (collectively, the "PACE Defendants"). ECF No. 65-1 ("Mot."). Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS the PACE Defendants' motion for summary judgment.

## I.    BACKGROUND

### A. Factual Background

The Court begins by summarizing the facts of the case in the light most favorable to the non-moving party, in this case Plaintiff G.J.M. ("Plaintiff"), as the Court must on summary judgment. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (in evaluating a motion for summary

1

judgment, "a court must view the evidence in the light most favorable to the opposing party"

(internal quotation marks omitted)).  Plaintiff is a minor who has been diagnosed with autism,

sometimes referred to by the parties as autism spectrum disorder ("ASD").  ECF No. 65-XX.[1]

Autism is characterized "by difficulties in social interaction, communication deficits, and

repetitive behaviors."  ECF No. 66 ("Opp.") at 4 (citing ECF No. 67 ("Ivy Decl.") ¶ 3).

Defendant PACE is a residential facility and school for individuals with developmental

disabilities including autism.  ECF No. 65-10 ("Ohlfs Decl.") ¶ 4.  PACE is incorporated as a

private, non-profit 501(c)(3) organization in California.  *Id.*  Defendant Kurt Ohlfs has served as

---

[1] The PACE Defendants have requested that the Court judicially notice Plaintiff's FAC in the
instant case and Plaintiff's complaint in *McElroy v. Tracy Unified School District*, No. 2:07-cv-
00086-MCE-EFB (E.D. Cal.).  ECF No. 65-2.  Plaintiff does not oppose the PACE Defendants'
request, and the Court finds these documents subject to judicial notice.  *See Reyn's Pasta Vella,
LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (holding that "court filings and other
matters of public record" are subject to judicial notice).  However, to the extent any of the factual
allegations in these documents is disputed, the Court does not take judicial notice of these disputed
allegations.  *See, e.g.*, *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("A court may
take judicial notice of matters of public record . . . But a court may not take judicial notice of a fact
that is subject to reasonable dispute.") (internal quotation marks omitted), *overruled on other
grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  Accordingly, the
PACE Defendants' request for judicial notice is GRANTED.
Plaintiff has also requested that the Court judicially notice subpoenaed records from the custodian
of records for the State of California Department of Social Services, Community Care Licensing
Division, Central California Regional Offices pertaining to the Community Care Licensing
Investigation of PACE.  ECF No. 69.  The PACE Defendants object to Plaintiff's request for
judicial notice on the grounds that the records contain disputed facts.  ECF No. 71-1.  The records
for which Plaintiff requests judicial notice include allegations brought against PACE and
summaries of interviews conducted in the course of the licensing investigation.  Plaintiff appears
to seek judicial notice not of the fact that the investigations took place but for the truth of the
matters described in the investigation reports.  The content of these investigation reports are not
the sort of undisputed facts subject to judicial notice.  *See, e.g.*, *United States v. Corinthian
Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (a court may take judicial notice of the existence of
public reports, but the court may not "on the basis of these reports, draw inferences or take notice
of facts that might reasonably be disputed"); *United States v. $127,000 in U.S. Currency*, 2012
WL 2917467, *5 (N.D. Cal. July 7, 2012) ("A court . . . may take judicial notice of undisputed
facts . . ., but it may not take judicial notice of disputed ones.").  Accordingly, Plaintiff's request
for judicial notice is DENIED.
Additionally, the PACE Defendants have filed a list of objections to the exhibits to Plaintiff's
opposition.  ECF No. 71-1.  The PACE Defendants' objections fail to comply with Civil Local
Rule 7-3(c), which provides that "[a]ny evidentiary and procedural objections to the opposition
must be contained within the reply brief or memorandum."  The PACE Defendants should have
included any evidentiary objections to Plaintiff's exhibits in the PACE Defendants' reply, not in a
separate document.  Because the PACE Defendants have failed to comply with Civil Local Rule 7-
3(c), the Court DENIES the PACE Defendants' objections.

2

Case No. 14-CV-04118-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

PACE's Executive Director since 2005. *Id.* ¶¶ 1, 3, 6. Defendant Kelly Montague is a Board Certified Behavioral Analyst ("BCBA"). ECF No. 65-9 ("Montague Decl.") ¶ 1. Montague acted as the BCBA for PACE from October 2011 to March 2012. *Id.* ¶ 10. During Montague's tenure with PACE, Montague also acted as the BCBA for FACES—a division of PACE that provides in-home behavioral services to developmentally disabled minors. *Id.* ¶ 4. Defendant Megan Nolan, Ph.D., is a psychologist who provided behavioral services through PACE beginning in March 2012. ECF No. 65-18 ("Nolan Decl.") ¶¶ 1-2.

**1. Care Providers During Plaintiff's Time at PACE**

When Plaintiff arrived at PACE, PACE's behaviorist was behavioral assistant Cairbe Fanslow. Mot. at 5; ECF No. 68-2, Exh. C.

In February 2011, Melissa Schulz, BCBA, took over for Fanslow as the behaviorist for PACE. Schultz was responsible for 36 PACE residents and 60 additional PACE students. ECF No. 68-1, Exh. B ("Schultz Depo.") at 14:1-25. Schultz testified that her caseload at PACE was "unmanageable" because PACE lacked sufficient trained staff members to provide "quality services" to PACE's clients. *Id.* at 28:3-29:8, 32:2-19. Schultz left PACE in October 2011. *Id.* at 34:23-35:2.

After Schultz left PACE, Defendant Montague provided behavioral services at PACE while continuing to provide behavioral services at FACES. ECF No. 68-3, Exh. K ("Montague Depo.) at 16:23-17:8, 18:7-13. Like Schultz, Montague believed that PACE did not have sufficient behavioral support staff for the number of patients served by PACE. ECF No. 68-4, Exh. M (email from Montague to Ohlfs in January 2012 stating that "the residential program is in need of more support than I am able to provide"); ECF No. 68-5, Exh. R (email from Montague in January 2012 stating that she thought it was "accurate" that "substantial staff training and ongoing staff support are needed" for PACE).

Montague eventually resigned from PACE, and Defendant Nolan was hired as PACE's replacement behaviorist in April 2012. Opp. at 14. PACE additionally hired Adrienne Granadosin-Deanes, a BCBA, to assist with implementing a behavior plan for Plaintiff. ECF No.

Case No. 14-CV-04118-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    68-6, Exh. FF ("Granadosin-Deanes Depo.") at 10:14-19.

2        **2.   Plaintiff's Time at PACE**

3        Plaintiff attended PACE as a resident and student from September 2010, when Plaintiff

4    was 12, until July 2012, when Plaintiff was 14.  FAC ¶¶ 23, 138; ECF No. 65-14 ("Lucey Decl.")

5    ¶ 3.

6        At various times prior to Plaintiff's arrival at PACE, Plaintiff had engaged in disruptive

7    behaviors including displaying aggression and engaging in self-injurious behaviors like head-

8    banging.  FAC ¶ 26; Lucey Decl. ¶ 4, Exh. B.  Plaintiff's parents reported that Plaintiff's head-

9    banging behavior began when Plaintiff was 2 years old.  Lucey Decl. ¶ 4, Exh. B.  By 2006,

10   Plaintiff's head-banging had caused him to develop a permanent knot in his head.  Lucey Decl.

11   ¶ 8, Exh. F (pediatrician report from April 2006 recording Plaintiff's mother's report that

12   Plaintiff's head-banging had resulted in a permanent knot on Plaintiff's head).[2]  In 2007, Plaintiff

13   filed a lawsuit against Plaintiff's prior school district and related individuals and entities alleging

14   causes of action based in part upon Plaintiff's severe head-banging.  *See McElroy v. Tracy Unified*

15   *Sch. Dist.*, No. 07-CV-00086-MCE (E.D. Cal.), ECF No. 1 ¶ 8.  Plaintiff's aggressive and self-

16   injurious behaviors resulted in multiple psychiatric hospitalizations prior to Plaintiff's arrival at

17   PACE.  Lucey Decl. ¶¶ 4, 6, Exhs. B, D.

18       At the time Plaintiff arrived at PACE, the intake forms from PACE indicate that Plaintiff

19   was not injuring himself, though Plaintiff did exhibit aggressive behaviors such as kicking, hitting,

20   or spitting at others.  ECF No. 68-2, Exh. D (Plaintiff's 30-day intake form from PACE); 68-2,

21   Exh. E (Plaintiff's initial behavior support plan from PACE).

22       Plaintiff's disruptive behaviors, including self-injurious behaviors, escalated beginning in

23   early 2011, and in September 2011, Plaintiff's mother described Plaintiff as going into rages and

24   banging his head to the point of injury.  Lucey Decl. ¶ 13, Exh. K ("Gia McElroy Depo.") at

25   _____

26   [2] Although not a focus of Plaintiff's opposition to the instant motion, Plaintiff's First Amended
     Complaint alleges that the PACE Defendants caused Plaintiff to develop this knot, even though
27   Plaintiff did not attend PACE until 2010—4 years after Plaintiff developed the knot.  *See* ECF No.
     42-1 ¶ 37.

28
     Case No. 14-CV-04118-LHK
     ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

71:16-72:3; Lucey Decl. ¶ 19, Exh. Q (report from Plaintiff's medical provider).  At the time, Plaintiff's mother stated that Plaintiff's increased disruptive behaviors coincided with changes in Plaintiff's seizure medication.  Lucey Decl. ¶ 19, Exh. Q.

In October 2011, Schultz recommended to Ohlfs that Plaintiff receive a one-to-one aide to respond to the increase in Plaintiff's disruptive behaviors, including self-injurious behaviors, over the preceding four months.  Schultz Depo. at 57:11-25.  In October and November 2011, Plaintiff's medical providers again altered Plaintiff's seizure medication.  Lucey Decl. ¶ 20, Exh. R (Bright Minds Institute record documenting report on Plaintiff's status by Plaintiff's mother). Some of Plaintiff's disruptive behaviors, particularly Plaintiff's obsessive compulsive behaviors such as chewing paper, continued to increase through October and November 2011.  *Id.*  However, Plaintiff's mood improved during this period and Plaintiff demonstrated "reduced agitation and aggression." *Id.*  Montague personally observed Plaintiff only once—in December 2011— between October 2011 and February 2012.  ECF No. 68-5, Exh. T (February 2012 email from Montague stating that she had observed Plaintiff only once).

In February and March 2012, Holly White, an outside contractor and BCBA, was brought in to evaluate Plaintiff and develop a behavior plan for Plaintiff.  ECF No. 68-5, Exh. T (February 2012 email from White explaining that she had been asked to complete an assessment of Plaintiff and make suggestions for his behavior plan); ECF No. 68-6, Exh. AA (White's report on Plaintiff, dated March 5, 2012).

PACE then hired Adrienne Granadosin-Deanes, a BCBA, to assist with implementing White's behavior plan for Plaintiff.  Granadosin-Deanes Depo. at 10:14-19.  Plaintiff's disruptive behaviors improved during this time period.  *Id.* at 16:9-18, 20:7-12.  Plaintiff left PACE at the end of July 2012.  Mot. at 7; Opp. at 14.

### B. Procedural History

Plaintiff and his parents, George McElroy and Gia McElroy, filed the instant lawsuit against the PACE Defendants and the Santa Clara County Office of Education in state court on June 19, 2014.  ECF No. 1.  On September 11, 2014, the case was removed to the Northern

Case No. 14-CV-04118-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

District of California.  *Id.*  The case was reassigned to the undersigned judge on September 18, 2014.  ECF No. 6.  The PACE Defendants filed an answer on September 25, 2014.  ECF No. 7. Pursuant to the parties' stipulation, ECF No. 25, the PACE Defendants amended their answer on January 13, 2015.  ECF No. 22.

On January 22, 2015, the parties jointly filed a stipulation to stay the case pending resolution of a motion to disqualify the attorney for Plaintiff and Plaintiff's parents.  ECF No. 27. On January 23, 2015, the Court granted the stipulation to stay the case, ECF No. 28, and the PACE Defendants filed their motion to disqualify the attorney for Plaintiff and Plaintiff's parents, ECF No. 29.  Plaintiff and his parents filed an opposition to the motion on February 13, 2015. ECF No. 34.  The PACE Defendants filed a reply on February 20, 2015.  ECF No. 36.  On May 13, 2015, the Court denied the motion.  ECF No. 38.  The Court lifted the stay on May 21, 2015. ECF No. 39.

On July 21, 2015, Plaintiff and his parents filed an unopposed motion to file an amended complaint.  ECF No. 42.  On August 5, 2015, Plaintiff and his parents filed an unopposed motion to dismiss Plaintiff's parents in their individual capacity from the lawsuit.  ECF No. 45.  On August 19, 2015, the Court granted the motion to file an amended complaint and granted the motion to dismiss Plaintiff's parents' individual claims.  ECF No. 50.  Accordingly, Plaintiff's parents remain in the case only as Plaintiff's guardians ad litem.  *See* First Amended Compl. ("FAC"), ECF No. 42-1.

The PACE Defendants filed an answer to the FAC on August 25, 2015.  ECF No. 51.  The Santa Clara County Office of Education filed an answer on January 20, 2016.  ECF No. 56.

Plaintiff filed a motion for leave to file a second amended complaint on March 4, 2016. ECF No. 58.  The Court denied Plaintiff's motion on March 9, 2016.  ECF No. 61.

The PACE Defendants filed the instant motion for summary judgment on April 7, 2016. ECF No. 65.  Plaintiff filed an opposition with supporting exhibits, including one expert declaration, on April 21, 2016, ECF Nos. 66-69, and an additional expert report in support of Plaintiff's opposition on April 26, 2016, ECF No. 70.  The PACE Defendants filed a reply on

Case No. 14-CV-04118-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

1     April 28, 2016.  ECF No. 71.  On May 11, 2016, Plaintiff filed an administrative motion to replace

2     the expert report filed on April 26.  ECF No. 75.  The same day, the PACE Defendants filed

3     objections to Plaintiff's administrative motion.  ECF No. 76.

4          On May 9, 2016, Plaintiff and the Santa Clara County Office of Education filed a notice of

5     settlement and proposed order approving the settlement.  ECF Nos. 72-74.

6     **II.     LEGAL STANDARD**

7          Summary judgment is appropriate if, viewing the evidence and drawing all reasonable

8     inferences in the light most favorable to the nonmoving party, there are no genuine issues of

9     material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);

10    *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).  At the summary judgment stage, the Court

11    "does not assess credibility or weigh the evidence, but simply determines whether there is a

12    genuine factual issue for trial."  *House v. Bell*, 547 U.S. 518, 559-60 (2006).  A fact is "material"

13    if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby,*

14    *Inc.*, 477 U.S. 242, 248 (1986), and a dispute as to a material fact is "genuine" if there is sufficient

15    evidence for a reasonable trier of fact to decide in favor of the nonmoving party, *id.*  "If the

16    evidence is merely colorable, or is not significantly probative, summary judgment may be

17    granted."  *Id.* (citations omitted).

18         The moving party bears the initial burden of identifying those portions of the pleadings,

19    discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex*

20    *Corp.*, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial,

21    it must affirmatively demonstrate that no reasonable trier of fact could find other than for the

22    moving party, but on an issue for which the opposing party will have the burden of proof at trial,

23    the party moving for summary judgment need only point out "that there is an absence of evidence

24    to support the nonmoving party's case."  *Id.* at 325; *accord Soremekun v. Thrifty Payless, Inc.*, 509

25    F.3d 978, 984 (9th Cir. 2007).  Once the moving party meets its initial burden, the nonmoving

26    party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that

27    there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250.

28

*United States District Court*
*Northern District of California*

7

## III.   DISCUSSION

The FAC asserts the following causes of action against the PACE Defendants: (1) assault and battery under California law against Defendant Ohlfs; (2) false imprisonment under California law against Defendants PACE, Ohlfs, Montague, and Nolan; (3) negligence under California law against all PACE Defendants; (4) negligence per se under California law against all PACE Defendants; (5) fraud under California law against all PACE Defendants; (6) negligent infliction of emotional distress under California law against all PACE Defendants; (7) intentional infliction of emotional distress under California law against all PACE Defendants; (8) violation of the Unruh Civil Rights Act, Cal. Civ. Code § 51, 52, 54 *et seq.*, against all PACE Defendants; (9) violation of the Individuals with Disabilities Education Act, 20 U.S.C. § 1414 *et seq.*, against PACE; (10) violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, against all PACE Defendants; (11) violation of 42 U.S.C. § 1983 against all PACE Defendants.  *See* FAC ¶¶ 143-264.  The PACE Defendants move for summary judgment on all eleven causes of action brought against the PACE Defendants.

Plaintiff concedes that summary judgment is appropriate on Plaintiff's first cause of action for assault and battery and on Plaintiff's second cause of action for false imprisonment.  Plaintiff additionally concedes that summary judgment is appropriate as to all causes of action against Defendant Megan Nolan.  Opp. at 2 n.1 (Plaintiff does not oppose Defendants' motion for summary judgment as to assault and battery, false imprisonment, and Defendant Megan Nolan and merely states that "Plaintiff agrees to adjudication of his assault/battery and false imprisonment claims and all claims against defendant Megan Nolan.").  Accordingly, the Court GRANTS summary judgment on Plaintiff's first and second causes of action as to the PACE Defendants and on all of Plaintiff's causes of action as to Defendant Megan Nolan.

Plaintiff disputes that summary judgment is appropriate as to the nine remaining causes of action against the PACE Defendants.  The Court begins by addressing together Plaintiff's California tort claims for negligence, negligence per se, fraud, negligent infliction of emotional distress, and intentional infliction of emotional distress, all of which share a common element of

Case No. 14-CV-04118-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

causation.  The Court then addresses each of Plaintiff's remaining causes of action against the PACE Defendants in turn.

### A.  Causation for California Tort Claims

In California, the torts of negligence, negligence per se, fraud, negligent infliction of emotional distress, and intentional infliction of emotional distress all require a showing of causation as an element of the cause of action.  *See Ladd v. Cty. of San Mateo*, 12 Cal. 4th 913, 917-18 (1996) (the elements of negligence are "(a) a legal duty to use due care; (b) a breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury" (italics and brackets omitted)); *Daum v. SpineCare Med. Grp., Inc.*, 52 Cal. App. 4th 1285, 1306 (1997) (the elements of negligence per se are "(1) the defendant violated a statute or regulation; (2) the violation caused the plaintiff's injury; (3) the injury resulted from the kind of occurrence the statute or regulation was designed to prevent; and (4) the plaintiff was one of the class of persons the statute or regulation was intended to protect"); *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1062 (2012) ("Thus, there are two causation elements in a fraud cause of action. First, the plaintiff's actual and justifiable reliance on the defendant's misrepresentation must have caused him to take a detrimental course of action. Second, the detrimental action taken by the plaintiff must have caused his alleged damage."); *Faunce v. Cate*, 222 Cal. App. 4th 166, 172 (2013) (the elements of intentional infliction of emotional distress are "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct"); *Huggins v. Longs Drug Stores Calif., Inc.*, 6 Cal. 4th 124, 129 (1993) ("Negligent infliction of emotional distress is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply.").  In the instant case, the damage allegedly caused by the PACE Defendants was injury to Plaintiff in the form of an increase in Plaintiff's disruptive behaviors, and emotional distress to Plaintiff as evidenced by the increase in Plaintiff's disruptive behaviors.  *See generally* FAC.  More specifically, Plaintiff argues that PACE's failure to properly

Case No. 14-CV-04118-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

provide Applied Behavior Analysis ("ABA") therapy—a therapy directed at "decreas[ing] harmful and maladaptive behavior, while increasing functional and adaptive skills" of patients with autism—caused the increase in Plaintiff's disruptive behaviors.  Opp. at 5; ECF No. 67 ¶ 5.

In California, "[t]he law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony." *Miranda v. Bomel Const. Corp.*, 187 Cal. App. 4th 1326, 1336 (2010); *see also Bockrath v. Aldrich Chemical Co.*, 21 Cal. 4th 71, 79 (1999) (holding that in cases that require resolving "complicated . . . medical causation issues, the standard of proof ordinarily required is a reasonable medical probability based upon competent expert testimony that the defendant's conduct contributed to the plaintiff's injury" (internal quotation marks and brackets omitted)). "Mere possibility alone is insufficient to establish a prima facie case. . . . A possible cause only becomes 'probable' when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action." *Id.* "Thus, proffering an expert opinion that there is some theoretical possibility the negligent act *could have been* a cause-in-fact of a particular injury is insufficient to establish causation." *Jennings v. Palomar Pomerado Health Sys., Inc.*, 114 Cal. App. 4th 1108, 1118 (2003).  Although the plaintiff's expert "need not exclude all other possibilities before he or she can express an opinion that defendant's conduct or product caused the plaintiff's harm," *Cooper v. Takeda Pharm. Am., Inc.*, 239 Cal. App. 4th 555, 580 (2015), "the plaintiff must offer an expert opinion that contains a reasoned explanation illuminating why the facts have convinced the expert, and therefore should convince the jury, that it is *more probable than not* the negligent act was a cause-in-fact of the plaintiff's injury." *Jennings*, 114 Cal. App. 4th at 1118.

The PACE Defendants contend that summary judgment is appropriate as to each of Plaintiff's tort causes of action because Plaintiff has not shown that Plaintiff's disruptive behaviors were caused by the PACE Defendants' alleged wrongdoing.  In support of their Motion, the PACE Defendants attach the declaration and expert report of Dr. Charles Scott.  *See* ECF No. 65-4.  Dr. Scott opines that the increase in Plaintiff's disruptive behaviors was caused by "changes in his

10

medications, a lack of sleep, residential placement changes, and the onset of puberty." *Id.* ¶ 8. Accordingly to Dr. Scott, there is additionally evidence in the record that Plaintiff was not responsive to ABA interventions, such that Plaintiff's disruptive behaviors would have increased even if Plaintiff had received ABA interventions. *Id.* ¶ 9. Dr. Scott further opines that Plaintiff's disruptive behaviors are not a form of injury at all but are instead Plaintiff's "method of getting attention, his response to not getting what he wants and his method of showing frustration." *Id.* Based on Dr. Scott's expert opinion, the PACE Defendants argue that Plaintiff cannot show that the PACE Defendants caused the increase in Plaintiff's disruptive behavior.

Plaintiff's Opposition counters that the opinions of two experts—Dr. Jonathan Ivy and Dr. Fernando Miranda—establish that there is a material factual dispute regarding whether the PACE Defendants caused the increase in Plaintiff's disruptive behavior. The Court discusses each of Plaintiff's proffered experts in turn. Ultimately, the Court concludes that neither expert offers "a reasoned explanation illuminating why the facts have convinced the expert, and therefore should convince the jury, that it is more probable than not that the negligent act was a cause-in-fact of the plaintiff's injury." *Jennings*, 114 Cal. App. 4th at 1118 (emphasis omitted). Thus, Plaintiffs have not "proven within a reasonable medical probability based upon competent expert testimony" that the inadequate staffing at PACE caused Plaintiff's disruptive behavior. *See Miranda*, 187 Cal. App. 4th at 1336.

### 1. Dr. Ivy

Plaintiff attached to the Opposition a declaration from Dr. Ivy. *See* ECF No. 67. Dr. Ivy's declaration is based solely upon reviewing Plaintiff's records. *Id.* ¶¶ 3, 13. It appears that Dr. Ivy never met with or interviewed Plaintiff, and that Dr. Ivy never reviewed Plaintiff's post-PACE records. *Id.*; Lucey Decl., ¶ 29, Exh. AA at 16-17.

In his declaration, Dr. Ivy argues that many of the potential causes for Plaintiff's disruptive behavior identified by Dr. Scott do not satisfactorily explain the increase in Plaintiff's disruptive behavior. The Court addresses each in turn.

Specifically, Dr. Ivy opines that changes in medication do not explain the increase in

Case No. 14-CV-04118-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

Plaintiff's disruptive behavior because, according to Dr. Ivy, Plaintiff's behavior changes began in May or June 2011 whereas Plaintiff's medication did not change until September 2011. *Id.* ¶¶ 13-14. However, Dr. Ivy fails to account for the fact that Plaintiff's medical records indicate that Plaintiff's medication changed as early as March 2011, not September 2011 as stated by Dr. Ivy. *See* ECF No. 71-2, Exh. A (Bright Minds Institute record documenting concerns raised by Plaintiff's mother following changes in medication in March 2011). Additionally, Dr. Ivy does not address the fact that, according to Plaintiff's medical records, Plaintiff's mother believed Plaintiff's changes in behavior were tied to the changes in Plaintiff's seizure medications. *Id.*; Lucey Decl. ¶ 19, Exh. Q.

Dr. Ivy next opines that Plaintiff's residential placement changes do not explain the change in Plaintiff's behavior because Plaintiff's residential placement changes occurred in March 2011 and July 2012, whereas, accordingly to Dr. Ivy, Plaintiff's increased disruptive behavior began in May 2011 at the earliest. *Id.* ¶ 15. Dr. Ivy additionally states that Plaintiff had successfully changed residential placement prior to his time at PACE, and suggests that the change in residential placement at PACE would not have affected Plaintiff's behavior. *Id.* However, Dr. Ivy does not address the fact that Plaintiff's residential placement change in March 2011 appears to coincide with the reports in Plaintiff's records that Plaintiff's behavior deteriorated in March and April 2011. Lucey Decl. ¶ 19, Exh. Q; ECF No. 71-2, Exh. A. Indeed, despite the evidence in the record to the contrary, Dr. Ivy does not appear to acknowledge any change in Plaintiff's behavior prior to May 2011, and even so, Dr. Ivy's declaration is inconsistent about when Dr. Ivy believes Plaintiff's disruptive behaviors began in May 2011, June 2011, or July 2011. Dr. Ivy states variously that Plaintiff's records "show challenging behavior, namely SIB [self-injurious behavior], increasing in frequency as early as June 2011," that Plaintiff had "increased self-injurious behaviors that started in July 2011," and that Plaintiff's records show "[d]ata on self-injury" beginning "on or about May 2011." ECF No. 67 ¶ 14-15.

As to the onset of puberty, Dr. Ivy acknowledges that "[p]hysiological and biological changes can certainly impact how an individual interacts with the world around them," and that

Case No. 14-CV-04118-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

these changes can lead a child to stop responding to previously effective interventions.  *Id.* ¶ 16.
Thus, Dr. Ivy agrees with Dr. Scott that puberty can result in changes in behavior, and that
strategies for managing disruptive behaviors that were effective prior to puberty may prove
ineffective following the onset of puberty.  *Id.*  Nevertheless, Dr. Ivy argues that the changes in
behavior associated with puberty can be managed by "more robust" interventions.  *Id.*  That
changes in behavior can be managed, however, does not change the fact that the changes in
behavior are *caused* by the onset of puberty.  Dr. Ivy does not explain why such changes in
behavior associated with puberty would not explain the increase in Plaintiff's disruptive behavior,
let alone why the PACE Defendants' conduct is a more probable cause of Plaintiff's disruptive
behaviors than the onset of puberty.  *See id.*; *Jennings*, 114 Cal. App. 4th at 1118 (to prove
causation, Plaintiff must provide competent expert testimony that "it is more probable than not
that the negligent act was a cause-in-fact of the plaintiff's injury").

Furthermore, aside from Dr. Ivy's conclusory assertion that "the behavioral programming
developed and implemented (or not implemented) at PACE had the direct effect of increasing
[Plaintiff's] challenging behaviors," *id.* ¶ 22, Dr. Ivy's declaration does not provide any evidence
that the PACE Defendants' conduct caused Plaintiff's disruptive behavior.  *See Nelson v. Matrixx
Initiatives, Inc.*, No. C 09-02904 WHA, 2012 WL 4829327, at *1 (N.D. Cal. Oct. 10, 2012)
(granting summary judgment to the defendant where the plaintiff "set forth no admissible expert
testimony on the issue of specific causation, a necessary element for each of plaintiff's claims"),
*aff'd* 592 Fed. App'x 591, 592 (9th Cir. 2015).

Rather, as Dr. Ivy concedes, Plaintiff has a long history of "problem behaviors" dating
back to when Plaintiff was a young boy.  ECF No. 67 ¶ 17.  Dr. Ivy attempts to link this long
history of "problem behaviors" to the PACE Defendants by opining that it is possible that
longstanding "problem behavior can be effectively managed and reduced with comprehensive
quality programming," namely ABA therapy.  *Id.*  Specifically, Dr. Ivy opines that ABA "is the
most effective educational and treatment approach for individuals with ASD," *id.* ¶ 5, and that
ABA treatment would have been effective for Plaintiff because Plaintiff's disruptive behaviors

Case No. 14-CV-04118-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

were effectively managed in 2008 when Plaintiff was participating in the "structured" program at Land Park. *Id.* ¶ 19. However, although Dr. Ivy opines that ABA therapy "is the most effective educational and treatment approach for individuals with ASD," *id.* ¶ 5, Dr. Ivy does not discuss the success rate of ABA. Moreover, Dr. Ivy does not identify what behaviors Plaintiff would not exhibit if Plaintiff had received ABA. In fact, Dr. Ivy does not address the evidence cited by Dr. Scott that ABA treatment following Plaintiff's time at PACE proved ineffective. *Id.* Indeed, Dr. Ivy does not discuss and appears not to have reviewed Plaintiff's post-PACE records. Lucey Decl. ¶ 29, Exh. AA at 16-17. Thus, Dr. Ivy does not address the efficacy of ABA therapy generally, Dr. Ivy did not review the specific evidence regarding Plaintiff's reaction to ABA therapy following Plaintiff's time at PACE, and Dr. Ivy does not explain how the PACE Defendants could have caused behaviors that date back to long before Plaintiff's time at PACE. Therefore, Dr. Ivy's testimony does not "prove[] within a reasonable medical probability" that the inadequate staffing at PACE caused Plaintiff's disruptive behavior, as required by California law. *See Miranda*, 187 Cal. App. 4th at 1336.

Finally, Dr. Ivy acknowledges in his declaration that Plaintiff's disruptive behaviors are "purposeful and functional," ECF No. 67 ¶ 7, that Plaintiff has exhibited disruptive behaviors since Plaintiff was "a young boy," *id.* ¶ 17, and that "the behaviors exhibited by the Plaintiff are his method of getting attention, his response to not getting what he wants, and his method of showing frustration," *id.* ¶ 20. In fact, Plaintiff's parents report that Plaintiff's head-banging began when Plaintiff was as young as 2 years old. Lucey Decl. ¶ 4, Exh. B. By 2006—four years before Plaintiff enrolled at PACE in September 2010—Plaintiff's head-banging resulted in a permanent knot in Plaintiff's head. Lucey Decl. ¶ 8, Exh. F. This evidence shows that Plaintiff's disruptive behaviors are not a form of injury caused by the PACE Defendants' conduct but instead are a method of communication developed by Plaintiff long before Plaintiff's time with the PACE Defendants. *See also* Lucey Decl. ¶ 4, Exh. B (psychiatric evaluation of Plaintiff from 2005, five years prior to Plaintiff's enrollment at PACE, describing Plaintiff's aggressive and self-injurious behaviors). Dr. Ivy does not explain how PACE's conduct could have caused these longstanding

14

behavioral problems.

Given the numerous explanations supported by the record for Plaintiff's disruptive behaviors that are unrelated to the PACE Defendants' conduct, none of which Dr. Ivy's declaration rebuts, the Court concludes that Dr. Ivy has not provided "a reasoned explanation illuminating why the facts have convinced the expert, and therefore should convince the jury, that it is more probable than not that the negligent act was a cause-in-fact of the plaintiff's injury." *Jennings*, 114 Cal. App. 4th at 1118 (emphasis omitted). Accordingly, Dr. Ivy's declaration is legally insufficient to satisfy Plaintiff's burden of proof on causation. *See id.* ("[P]roffering an expert opinion that there is some theoretical possibility the negligent act *could have been* a cause-in-fact of a particular injury is insufficient to establish causation."); *see also Miranda*, 187 Cal. App. 4th at 1336 ("The law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony.").

### 2. Dr. Miranda

In addition to Dr. Ivy's declaration, Plaintiff relies upon the expert report of Dr. Fernando Miranda. Plaintiff produced Dr. Miranda's expert report to Defendants as a rebuttal report on April 18, 2016. ECF No. 76-1 ¶ 3. However, when Plaintiff filed Plaintiff's opposition to the PACE Defendants' motion for summary judgment on April 21, 2016, Plaintiff failed to attach Dr. Miranda's expert report, or a declaration from Dr. Miranda. Instead, Plaintiff filed Dr. Miranda's expert report separately on April 26, 2016—five days after the deadline to oppose the PACE Defendants' motion for summary judgment and two days prior to the PACE Defendants' deadline to file their reply brief. *See* ECF No. 70. Additionally, Plaintiff failed to include a declaration authenticating the expert report filed on April 26. *See id.* The PACE Defendants in their reply brief identified these procedural faults in Plaintiff's citation to Dr. Miranda's expert report. *See* ECF No. 71. Subsequently, on May 11, 2016—16 days after the close of expert discovery— Plaintiff filed an administrative motion to replace the untimely and unauthenticated expert report filed on April 26 with a new expert report from Dr. Miranda. ECF No. 75. The newly proffered expert report contains the same opinions as Dr. Miranda's original expert report but is presented in

15

1   the form of a signed declaration.  *See id.*  The PACE Defendants filed objections to Plaintiff's

2   administrative motion to file Dr. Miranda's new expert report on May 11, 2016.  ECF No. 76.

3          The Court DENIES Plaintiff's administrative motion to replace Dr. Miranda's expert

4   report.  Expert discovery closed on April 25, 2016, and Plaintiff did not produce Dr. Miranda's

5   new report until May 11, 2016—16 days after the close of expert discovery.  Accordingly, the new

6   expert report is untimely.  Additionally, the Court agrees with the PACE Defendants that the

7   expert report from Dr. Miranda filed with the Court on April 26, 2016 was both unauthenticated

8   and untimely.  *See* Civ. Local R. 7-3(a) (opposition to a motion must be filed not more than 14

9   days after the motion was filed); Civ. Local R. 7-5(a) (documents supporting factual contentions

10  made in opposition to a motion "must be appropriately authenticated by an affidavit or

11  declaration").

12         Moreover, Dr. Miranda's expert report, like Dr. Ivy's expert report, fails to provide "a

13  reasoned explanation illuminating why the facts have convinced the expert, and therefore should

14  convince the jury, that it is more probable than not that the negligent act was a cause-in-fact of the

15  plaintiff's injury."  *Jennings*, 114 Cal. App. 4th at 1118 (emphasis omitted).  Dr. Miranda never

16  opines that Plaintiff's disruptive behavior was caused by the PACE Defendants' conduct.  Instead,

17  Dr. Miranda opines that "the failure of PACE to provide appropriate ABA therapy was irrevocably

18  detrimental to [Plaintiff's] development which will likely have long-lasting consequences" and

19  that appropriate ABA therapy would have helped Plaintiff to "maximize his potential."  ECF No.

20  70, Exh. 1 at 2-3.  Dr. Miranda does not explain how the alleged failure to provide appropriate

21  ABA therapy was detrimental to Plaintiff, in what way Plaintiff would have "maximize[d] his

22  potential" with ABA therapy, nor how likely it is that ABA therapy would have permitted Plaintiff

23  to achieve the unidentified benefits of ABA therapy.  *See id.*  Like Dr. Ivy, Dr. Miranda does not

24  identify the efficacy of ABA therapy nor what behaviors Plaintiff would not have exhibited if

25  Plaintiff had received ABA therapy.  Dr. Miranda's report contains no discussion of Plaintiff's

26  post-PACE behaviors and the fact that Plaintiff's post-PACE ABA therapy was ineffective.

27         Thus, even if Dr. Miranda's expert report were not untimely and unauthenticated, Dr.

28

16

United States District Court
Northern District of California

Miranda's expert report, like Dr. Ivy's expert report, is legally insufficient to meet Plaintiff's burden to show through expert evidence that it is more likely than not that the PACE Defendants' conduct caused Plaintiff's injury.  *See Miranda*, 187 Cal. App. 4th at 1336 ("The law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony.").  Because Plaintiff has not satisfied his burden to show causation, the Court need not address whether Plaintiff has produced sufficient evidence to satisfy the remaining elements of the California tort causes of action.

Therefore, the Court GRANTS summary judgment to the PACE Defendants on Plaintiff's California tort claims for negligence, negligence per se, fraud, negligent infliction of emotional distress, and intentional infliction of emotional distress.  *See Nelson v. Matrixx Initiatives, Inc.*, 592 Fed. App'x at 592 ("Without any reliable expert witness testimony on specific causation, the district court correctly granted [the defendant's] motion for summary judgment.").

### B. Unruh Act

California's Unruh Act provides that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b).

The PACE Defendants argue that they are entitled to summary judgment on Plaintiff's Unruh Act claim because PACE is not a "business establishment" covered by the Unruh Act and because Plaintiff has not shown that the PACE Defendants violated the Unruh Act by discriminating against Plaintiff because of his disability.

The Court concludes that Plaintiff has not shown that the PACE Defendants discriminated against Plaintiff.  Plaintiff's sole argument for why the PACE Defendants' conduct was discriminatory in violation of the Unruh Act is that the PACE Defendants allegedly made an "intentional decision to withhold services from a resident whose disability proved more

United States District Court
Northern District of California

1  troublesome" than the disabilities of PACE's other residents.  ECF No. 66 at 23.  In essence,

2  Plaintiff argues that the PACE Defendants discriminated against Plaintiff by allocating adequate

3  resources to other PACE residents but not to Plaintiff.  The only evidence Plaintiff cites to support

4  Plaintiff's argument that the PACE Defendants withheld services specifically from Plaintiff is that

5  the PACE Defendants supposedly decided not to authorize further funding for Plaintiff's care

6  because the PACE Defendants believed they were already spending enough money on Plaintiff.

7  *Id.*  However, the record citation provided by Plaintiff in support Plaintiff's theory that the PACE

8  Defendants did not want to spend more money on Plaintiff is inapposite.  Specifically, Plaintiff

9  cites to Schultz's deposition for the proposition that the PACE Defendants had "an intentional

10  unwillingness to spend the money necessary to care for [Plaintiff's] unique needs."  *See* Opp. at 23

11  (citing ECF No. 68, Exh. B at 63:15-64:16).  In that portion of Schultz's deposition, however,

12  Schultz was asked whether Schultz had ever stated that "she [Schultz] was repeatedly told by

13  executive director [sic] of the facility that the facility had already been spending enough money on

14  behaviorist time with the child and likened his response to directives as, quote, trying to teach a

15  turnip, closed quote, period."  Schultz responded only, "I don't remember that."  ECF No. 68,

16  Exh. B at 63:15-64:16.  By citing Plaintiff's attorney's question instead of Schultz's answer,

17  Plaintiff misrepresents Schultz's testimony and the record in the case.

18       Moreover, the evidence presented by Plaintiff shows that Plaintiff did received extra

19  individualized services at PACE, thus undermining Plaintiff's unsupported assertion that the

20  PACE Defendants were unwilling to spend money to provide services to Plaintiff.  For example,

21  Plaintiff acknowledges that in February and March 2012 Plaintiff received an individual outside

22  assessment by Holly White (an outside contractor and BCBA) and that Adrienne Granadosin-

23  Deanes, a BCBA, was subsequently hired as Plaintiff's one-to-one aide at PACE to assist with

24  implementing White's behavior plan for Plaintiff.  Opp. at 13-14; ECF No. 68-6, Exh. AA;

25  Granadosin-Deanes Depo. at 10:14-19.

26       Because Plaintiff has not identified evidence in the record to support Plaintiff's theory that

27  the PACE Defendants discriminated against Plaintiff in violation of the Unruh Act, the Court

28

18

1    GRANTS summary judgment as to Plaintiff's Unruh Act claim against the PACE Defendants.

2    **C.  IDEA Violation**

3         The PACE Defendants next move for summary judgment on Plaintiff's cause of action

4    based on alleged violation of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et*

5    *seq.* (the "IDEA").  The IDEA requires state and public agencies to provide disabled minors with a

6    free and appropriate public education ("FAPE") and provides various procedural safeguards to

7    ensure that disabled minors receive the required FAPE.  One such procedural safeguard is the

8    requirement that each disabled minor receive an individualized education program.  By its terms,

9    however, the IDEA applies only to a "State educational agency, State agency, or local educational

10   agency."  20 U.S.C. § 1415(a).

11        The PACE Defendants argue that, as a private school, PACE and its employees are not

12   subject to the IDEA.  Mot. at 25.  With the exception of the District of New Jersey, every court to

13   have considered the issue has concluded that the IDEA does not apply to private schools because

14   private schools are not a "State educational agency, State agency, or local educational agency."

15   *See*, *e.g., St. Johnsburg Academy v. D.H.*, 240 F.3d 163, 171-72 (2d Cir. 2001) (holding that the

16   text of the IDEA and its implementing regulations all compel the conclusion that the IDEA does

17   not apply to private schools); *Ullmo v. Gilmour Academy*, 273 F.3d 671, 679 (6th Cir. 2001)

18   (holding that the IDEA does not apply to private schools); *McKenzie v. Smith*, 771 F.2d 1527,

19   1531 (D.C. Cir. 1985) (holding that the IDEA does not apply to private schools).  However, a

20   District of New Jersey case found that New Jersey state law requires that all private schools

21   comply with the IDEA.  *See PN v. Greco*, 282 F. Supp. 2d 221, 234 (D.N.J. 2003).  California has

22   no comparable law requiring private schools to comply with the IDEA.  Instead, California state

23   law explicitly reserves responsibility for IDEA compliance to government educational agencies.

24   Specifically, California Education Code § 56383 states that "even if a nonpublic, nonsectarian

25   school implements a child's individualized education program, responsibility for compliance with

26   this part and with the federal Individuals with Disabilities Education Act (20 U.S.C. Sec. 1400 et

27   seq.) and implementing regulations remains with the local educational agency pursuant to Section

28                                          19

1    300.325(c) of Title 34 of the Code of Federal Regulations."

2         Therefore, the Court concludes that in California, as in every jurisdiction except New

3    Jersey, the IDEA does not apply to private schools.  Accordingly, because PACE is a private

4    school and not a "State educational agency, State agency, or local educational agency," the Court

5    GRANTS summary judgment for the PACE Defendants as to Plaintiff's claim for IDEA

6    violations.

7    **D.    Rehabilitation Act**

8         The PACE Defendants next argue that they are entitled to summary judgment on Plaintiff's

9    claim that the PACE Defendants violated Section 504 of the Rehabilitation Act, codified at 29

10   U.S.C. § 794.  Section 504 of the Rehabilitation Act states:

11            No otherwise qualified individual with a disability in the United
             States, as defined in section 705(20) of this title, shall, solely by
12            reason of her or his disability, be excluded from the participation in,
             be denied the benefits of, or be subjected to discrimination under
13            any program or activity receiving Federal financial assistance.

14   29 U.S.C. § 794.  The PACE Defendants argue that Section 504 does not apply to the PACE

15   Defendants because the PACE Defendants do not receive federal financial assistance, and that the

16   PACE Defendants did not violate Section 504.

17        The Court need not address the PACE Defendants' argument that Section 504 does not

18   apply to PACE because the Court concludes that even if Section 504 does apply to PACE,

19   Plaintiff has not shown that PACE violated Section 504.  The Rehabilitation Act is concerned

20   primarily with whether disabled persons have opportunities comparable to non-disabled persons to

21   participate in programs receiving federal financial assistance, but it does not guarantee equal

22   results.  *See Traynor v. Turnage*, 485 U.S. 535, 548 (1988) (stating that "the central purpose of

23   § 504" is "to assure that handicapped individuals receive 'evenhanded treatment' in relation to

24   nonhandicapped individuals"); *Alexander v. Choate*, 469 U.S. 287, 304 (1985) ("Section 504

25   seeks to assure evenhanded treatment and the opportunity for handicapped individuals to

26   participate in and benefit from programs receiving federal assistance . . . The Act does not,

27   however, guarantee the handicapped equal results" from the federally-funded program).

28
     20

     Case No. 14-CV-04118-LHK
     ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

1    Moreover, Section 504 does not require that all disabled individuals receive equal treatment.  *See*

2    *id.* at 549 (holding that "[t]here is nothing in the Rehabilitation Act that requires that any benefit

3    extended to one category of handicapped persons also be extended to all other categories of

4    handicapped persons.").

5          In the instant case, there is no dispute that Plaintiff was granted admission to PACE, and

6    that he was not denied admission based on his disability.  As discussed above, Plaintiff has

7    provided no evidence that Plaintiff was treated differently than any other students at PACE based

8    on Plaintiff's disability.  Rather, the evidence identified by Plaintiff tends to show that PACE was

9    understaffed in a way that affected PACE's clients generally, not Plaintiff in particular.  *See, e.g.,*

10   Schultz Depo. at 28:3-29:8, 32:2-19 (Schultz's testimony that she felt her caseload was

11   "unmanageable" due to insufficient staff at PACE); ECF No. 68-4, Exh. M (email from Montague

12   to Ohlfs in January 2012 stating that "the residential program is in need of more support than I am

13   able to provide"); ECF No. 68-5, Exh. R (email from Montague in January 2012 stating that she

14   thought it was "accurate" that "substantial staff training and ongoing staff support are needed" for

15   PACE).  Moreover, the evidence produced by Plaintiff shows that Plaintiff did receive an

16   individual outside evaluation by Holly White (a consultant and BCBA), ECF No. 68-6, Exh. AA,

17   and an individual one-to-one aide, Adrienne Granadosin-Deanes, Granadosin-Deanes Depo. at

18   10:14-19.

19         Thus, Plaintiff has not shown that he was denied the opportunity to participate in programs

20   at PACE, nor that the PACE Defendants treated Plaintiff differently because of Plaintiff's

21   disability.  *See* 29 U.S.C. § 794.  Accordingly, the Court GRANTS summary judgment for the

22   PACE Defendants on Plaintiff's Rehabilitation Act claim.

23   **E.  42 U.S.C. § 1983**

24         Plaintiff's final cause of action against the PACE Defendants is a claim under 42 U.S.C.

25   § 1983 for violation of Plaintiff's constitutional rights.  A claim under Section 1983 requires "the

26   violation of a right secured by the Constitution and laws of the United States . . . committed by a

27   person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  The PACE

28

United States District Court
Northern District of California

21

Case No. 14-CV-04118-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

1    Defendants argue that Plaintiff's Section 1983 claim fails because the PACE Defendants are not

2    state actors.

3            Courts have held that a claim under Section 1983 may be brought against a private party

4    only if the Plaintiff shows that one of four tests is satisfied.  The tests are: "(1) public function; (2)

5    joint action; (3) governmental compulsion or coercion; and (4) governmental nexus."  *Kirtley v.*

6    *Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).

7            In the instant case, Plaintiff argues that the PACE Defendants are state actors because

8    "PACE contracted with the local district to provide education services to special education

9    students consistent with the mandates of federal and state law."  Opp. at 28.  Plaintiff argues that

10   "[t]his is a traditionally [sic] state service that was provided by PACE."  *Id.*  As Plaintiff does not

11   specify which test for state action Plaintiff believes is met, the Court addresses each of the four

12   tests in turn.

13       **1.  Public Function**

14           "Under the public function test, when private individuals or groups are endowed by the

15   State with powers or functions governmental in nature, they become agencies or instrumentalities

16   of the State and subject to its constitutional limitations."  *Lee v. Katz*, 276 F.3d 550, 554-55 (9th

17   Cir. 2002).  A function is governmental in nature for purposes of the public function test only if

18   the function is "both traditionally and exclusively governmental."  *Id.* at 555.

19           Here, Plaintiffs argue that the provision of education services to special education students

20   is "a traditionally [sic] state service."  Opp. at 28.  However, to satisfy the public function test, the

21   function must be not only traditionally but also exclusively performed by the state.  *Lee*, 276 F.3d

22   at 555.  In California, the care and education of developmentally disabled individuals is not

23   traditionally and exclusively performed by the state; rather, California law explicitly contemplates

24   that private entities will be involved in the care and education of such persons.  *See* Cal. Welf. &

25   Inst. Code § 4620(b) ("[T]he service provided to individuals and their families by regional centers

26   is of such a special and unique nature that it cannot be satisfactorily provided by state agencies.

27   Therefore, private nonprofit community agencies shall be utilized by the state for the purpose of

28

22

1   operating regional centers."); Cal. Educ. Code § 56383 (law regarding the placement of a student

2   with special needs in a "nonpublic, nonsectarian school"); *McHone v. Far Northern Regional Ctr.*,

3   14-cv-03385-EDL, 2015 WL 80676, at *5-8 (N.D. Cal. Jan. 5, 2015) (holding that in California a

4   private residential facility for disabled persons was not a state actor).

5        Thus, the Court concludes that Plaintiff has not shown that the PACE Defendants are state

6   actors under the public function test.  The Court turns next to the joint action test.

7        **2.   Joint Action**

8        The joint action test requires that the private entity be "a willful participant in joint activity

9   with the State or its agents," and that activity results in a constitutional violation.  *United States v.*

10  *Price*, 383 U.S. 787, 794 (1966).  The Ninth Circuit has held that the "joint action" test is satisfied

11  when the plaintiff shows that the government knowingly accepted a benefit derived from

12  unconstitutional conduct.  *See Parks Sch. of Business v. Symington*, 51 F.3d 1480, 1486 (9th Cir.

13  1995).

14       In the instant case, Plaintiff does not argue or point to any evidence that any governmental

15  actor or agency knowingly accepted a benefit flowing from unconstitutional conduct.  *See*

16  *generally* Opp.  Thus, Plaintiff has not shown that the joint action test is satisfied, so the Court

17  turns to the governmental compulsion test.

18       **3.   Governmental Compulsion**

19       To satisfy the governmental compulsion test, a plaintiff must show "significant

20  encouragement" or compulsion by the state on the private actors that goes beyond "a generally

21  applicable law."  *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 836-37, 841 (9th Cir.

22  1999).  "[T]he plaintiff must establish some other nexus sufficient to make it fair to attribute

23  liability to the private entity.  Typically, the nexus has consisted of participation by the state in an

24  action ostensibly taken by the private entity, through conspiratorial agreement [], official

25  cooperation with the private entity to achieve the private entity's goal [], or enforcement and

26  ratification of the private entity's chosen action []."  *Id.* at 841 (citations omitted).

27       In the instant case, Plaintiff has not alleged or cited to any evidence showing that any of

28

23

Case No. 14-CV-04118-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

the allegedly wrongful actions taken by the PACE Defendants were done through conspiratorial agreement with, official cooperation with, or with the official ratification of the state.  *See generally* Opp.  Accordingly, Plaintiff has not shown that the governmental compulsion test is satisfied.  The Court turns to the final test, the governmental nexus test.

### 4.  Governmental Nexus

The final test for whether the PACE Defendants are a state actor is the governmental nexus test.  The governmental nexus test requires that "there is such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself."  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (internal quotation marks omitted).  The fact that a private entity enters into a contract with the government to provide services on the government's behalf does not satisfy the governmental nexus test. *Rendell-Baker v. Kohn*, 457 U.S. 830, 840-41 (1982).  "Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."  *Id.* at 841.

In the instant case, Plaintiff argues that "PACE contracted with the local district to provide education services to special education students consistent with the mandates of federal and state law."  Opp. at 28.  Plaintiff makes no argument and points to no evidence supporting any further government involvement in PACE's activities, beyond the existence of PACE's contract with the local district.  *See generally id.*  This is insufficient to satisfy the governmental nexus test.  *See Rendell-Baker*, 457 U.S. at 841 ("Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts.").

Thus, Plaintiff has not satisfied any of the four state action tests. The PACE Defendants therefore may not be subject to a Section 1983 cause of action.

Accordingly, the Court GRANTS summary judgment to the PACE Defendants on Plaintiff's Section 1983 claim.

## IV.    CONCLUSION

Case No. 14-CV-04118-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    For the foregoing reasons, the Court GRANTS the PACE Defendants motion for summary

2 judgment.

3 **IT IS SO ORDERED.**

4

5 Dated: May 27, 2016

6

7 LUCY H. KOH
United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 14-CV-04118-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT